IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BERTRAND, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 05 C 0544 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| BARRY S. MARAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Christopher Bertrand and Frank Patterson Jr. ("Plaintiffs") are developmentally disabled adults eligible to participate in the Illinois Medicaid Home and Community-Based Services ("HCBS") waiver program. The HCBS program allows developmentally disabled adults to receive needed services outside of an institution. Plaintiffs seek to represent a class of developmentally disabled persons or mentally retarded persons who are enrolled and receiving services funded under the HCBS waiver program and who are seeking additional funding for more services offered in the HCBS program.

Plaintiffs bring suit against Barry S. Maram, in his official capacity as Director of the Illinois Department of Healthcare and Family Services (formerly the Illinois Department of Public Aid); Carol L. Adams, in her official capacity as Secretary of the Illinois Department of Human services; and Jerolene Johnson, in her official capacity as Director of the Division of Developmental Disabilities (together "Defendants"). Plaintiffs complain that Defendants violated and are violating their rights under 42 U.S.C. §§ 1396a(a)(8) and 1983 by failing to provide funding for Medicaid waiver services with reasonable promptness, even though Plaintiffs are eligible to receive such services. Specifically, Plaintiffs seek funding for Community Integrated Living Arrangement

("CILA") services under the waiver. Defendants have denied Plaintiffs the requested funding because Plaintiffs do not meet the Priority Population Criteria set out in the waiver. The parties have cross-moved for summary judgment. Because the Centers for Medicare and Medicaid Services ("CMS") knowingly approved Illinois' use of the Population Priority Criteria to limit CILA residential services under the waiver, Defendants have not failed to furnish Plaintiffs medical assistance with the reasonable promptness to which Plaintiffs are entitled under 42 U.S.C. § 1396a(a)(8). Accordingly, based on the undisputed facts, Defendants are entitled to judgment as a matter of law.

## Statement of Facts

The Medicaid program, established under Title XIX of the Social Security Act, 42 U.S.C. §1396, *et seq.*, is a joint federal-state program which provides medical assistance to low-income individuals. "Administration [of the Medicaid program] is entrusted to the Secretary of Health and Human Services, who in turn exercises his authority through the Centers for Medicare and Medicaid Services."[1] *Arkansas Dept. of Health and Human Services v. Ahlborn*, 126 S.Ct. 1752, 1758 (2006). States are not required to participate in the Medicaid program, but if a state elects to participate, it must comply with federal statutes and regulations. *See* 42 U.S.C. § 1396a(a)(10). Each state participating in the Medicaid program must provide certain mandatory services. *See* 42 C.F.R. § 440.210; 440.220. Other Medicaid services are optional at the discretion of each state. *See* 42 C.F.R. § 440.225. Once a State commits to provide optional services, it must provide them in compliance with the requirements of the Medicaid statute. States participating in the Medicaid

---

[1] Prior to 2001, CMS was known as the Health Care Financing Administration ("HCFA"). *See* 66 Fed.Reg. 35437, 2001 WL 746215.

program are required to develop a comprehensive plan for the provision of services and the plan must be approved by CMS. *See* 42 U.S.C. § 1396a(b); 42 C.F.R. § 430.14-15.

The State of Illinois participates in the Medicaid program and has filed a State Plan with the federal government. (Defendants' Response to Plaintiffs' Local Rule 56.1(a)(3) Statement of Material Facts, ¶ 36 ("Plfs.' 56.1, ¶ __").) The State of Illinois Medicaid program has opted to include intermediate care facilities for mentally retarded ("ICF/MR") and developmentally disabled ("ICF/DD") individuals. (Plfs.' 56.1, ¶ 36); *see* 42 U.S.C. § 1386d(a)(15), (d). The Medicaid statute allows states to bring even a broader range of services into Medicaid coverage through its waiver provision, which provides:

> The Secretary may by waiver provide that a State plan approved under this subchapter may include as "medical assistance" under such plan payment for part or all of the cost of home or community-based services (other than room and board) approved by the Secretary which are provided pursuant to a written plan of care to individuals with respect to whom there has been a determination that but for the provision of such services the individuals would require the level of care provided in a[n] ⋯ intermediate care facility for the mentally retarded the cost of which could be reimbursed under the State plan.

42 U.S.C. § 1396n(c)(1).

The State of Illinois requested and received a Medicaid Home and Community-Based Services waiver ("the Waiver") under the authority of § 1915(c) of the Social Security Act, 42 U.S.C. § 1396(c). (Plfs.' 56.1, ¶ 47.) The Waiver allows Illinois to provide home and community-based services to individuals who, but for the provision of such services, would require the level of care provided at an intermediate care facility for mentally retarded or developmentally disabled persons aged eighteen and older. (Plaintiffs' Response to Defendants' Local Rule 56.1(a)(3) Statement of Material Facts, ¶¶ 34-36 ("Defs.' 56.1, ¶ __").) Upon meeting the eligibility requirements for the Waiver, "the recipient or his or her legal representative will be – (1) Informed

of any feasible alternatives available under the waiver; and (2) Given the choice of either institutional or home and community-based services." 42 C.F.R. § 441.302.

The State of Illinois requested that various home and community-based services, including residential habilitation, be included in the Waiver. (Defs.' 56.1, ¶ 44.) "Residential habilitation" includes necessary nursing assessment, direction and monitoring by a registered professional nurse, and support services and assistance by a registered professional nurse or a licensed practical nurse to ensure the individual's health and welfare. (Defs.' 56.1, ¶ 48.) Residential habilitation services under the Waiver are provided in the Community Integrated Living Arrangement ("CILA") program. (Defs.' 56.1, ¶ 50.) The CILA program provides services and support in small group home settings, host family arrangements, individuals' own homes and family homes. (Defs.' 56.1, ¶ 51.) For residential services, including residential habilitation in a CILA, the State gives service priority to eligible persons according to the following priority population criteria: (1) individuals who are in crisis situations (e.g., including but not limited to, persons who have lost their caregivers, persons who are in abusive or neglectful situations); (2) individuals who are wards of the Illinois Department of Children and Family Services and are approaching the age of 22 and individuals who are aging out of children's residential services funded by the Office of Developmental Disabilities; (3) individuals who reside in State-Operated Developmental Centers; (4) Bogard class members, i.e., certain individuals with developmental disabilities who currently reside in a nursing facility; (5) individuals with mental retardation who reside in State-Operated Mental Health Hospitals; (6) individuals with aging caregivers; and (7) individuals who reside in private ICFs/MR or ICFs/DD. (Defs.' 56.1, ¶ 55.) The State of Illinois adopted the Priority Population Criteria for residential services to allocate effectively resources to those individuals who are most in need of residential services under the Waiver. (Defs.' 56.1, ¶ 56.) If an individual does not meet the Priority Population

Criteria and wants to receive residential services, the individual must receive them in an institutional setting through the ICF/DD program. (Defs.' 56.1, ¶ 57.)

Christopher Bertrand is a developmentally disabled adult who was 23 years old at the time the complaint was filed. (Defs.' 56.1, ¶¶ 1-2.) State officials found Christopher Bertrand eligible to participate in the HCBS-DD Waiver Program. (Defs.' 56.1, ¶ 3.) An application for CILA Services was submitted on Bertrand's behalf in December 2004. (Defs.' 56.1, ¶ 4.) The State denied his application in January 2005, because he did not meet the Priority Population Criteria for residential habilitation services. (Defs.' 56.1, ¶ 5.) In February 2005, Bertrand's application for CILA Services was resubmitted, this time with a letter from Bertrand's parents, describing their relative age and declining health. (Defs.' 56.1, ¶ 6.) The State approved his application in March 2005. (*Id.*) Bertrand has been receiving funding for CILA Services from the HCBS-DD waiver program since May 24, 2005. (Defs.' 56.1, ¶ 7.)

Plaintiff Frank Patterson, Jr. is a developmentally disabled adult who was 29 years old at the time the complaint was filed. (Defs.' 56.1, ¶ 9.) State officials found Patterson eligible to participate in the HCBS-DD Waiver Program. (Defs.' 56.1, ¶ 11.) Patterson does not receive funding for 24-hour CILA services, but he does receive funding for some non-residential services under the HCBS-DD Waiver Program. (Defs.' 56.1, ¶¶ 12-13.)

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court considers cross-motions for summary judgment from a "Janus-like" perspective,

5

examining each party's motion in turn and viewing all evidence and drawing all inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Of first note, the mooting of the class representative's personal claim does not bar him from continuing to represent the class. Next, in § 1396a(a)(8), Congress created a statutory entitlement to receive medical assistance with reasonable promptness for all eligible individuals. This entitlement includes funding for all services to which they are eligible under a § 1396n(c)(1) waiver. Because the CMS approved Illinois' use of the Priority Population Criteria for residential services and because Plaintiffs do not fall within those criteria, Plaintiffs are not eligible for residential CILA services under the Waiver.

**I.     Mootness**

Plaintiff Bertrand sought funding for community-based residential services in the HCBS-DD Waiver Program. (Am. Compl. ¶ 2.) Defendants had refused to authorize funding for 24-hour CILA services because he did not meet the Population Priority Criteria. (Am. Compl. ¶¶ 2, 37-40.) On May 9, 2005, Defendants authorized 24-hour CILA services to be provided to Bertrand. (Defs.' 56.1, ¶ 6.) Since May 24, 2005, Bertrand has resided in a CILA. (Defs.' 56.1, ¶ 7.) Bertrand thus now receives the full-range of CILA services to which he claimed he was entitled in the Complaint.

Generally, a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *See Stotts v. Community Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000). However, "the mooting of the named plaintiff's claim in a class action by the defendant's satisfying the claim does not moot the action so long as the case has been certified as a class action, or . . . so long as a motion for class certification has been made and not ruled on, unless . . . the movant has been dilatory." *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003). Bertrand filed his motion for class certification on February 10, 2005 and Bertrand

has not been dilatory in pursuing relief on the class claims. As such, Bertrand may continue to represent the putative class and this Court takes the facts of Bertrand's claim as they existed at the time the Complaint was filed. *See Kifer v. Ellsworth*, 346 F.3d 1155, 1156 (7th Cir. 2003) ("[T]he mooting of the class representative's personal claim does not bar him from continuing to represent the class").

## II. Right of Action under 42 U.S.C. § 1983

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Plaintiffs argue that 42 U.S.C. § 1396a(a)(8) establishes a right to reasonably prompt medical assistance that may be enforced through § 1983. Section 1396a(a)(8) states that "[a] State plan for medical assistance must provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."

Congress established the Medicaid program under Title XIX of the Social Security Act and pursuant to its Spending Clause powers. When legislation is enacted pursuant to Congress' spending power, federal funding provisions cannot be enforced under § 1983 "unless Congress speaks with a clear voice and manifests an unambiguous intent to confer individual rights." *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002) (internal quotes omitted); *see Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981) ("In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federal imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the

State"). Such unambiguously conferred rights and entitlements are distinguished from broader, more vague benefits or interests that are not enforceable. *Id.* at 275, 283.

A "statutory entitlement to reasonable promptness of medical services (42 U.S.C. § 1396a(a)(8))" exists under the Medicaid statute.[2] *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003); *Gonzaga*, 536 U.S. at 287 (stating that individual entitlements are enforceable under § 1983). This Court would be hesitant to follow this statement, made without any analysis, except that later in *Bruggeman*, the Seventh Circuit found that 42 U.S.C. § 1396a(a)(19) "cannot be interpreted to create a private right of action, given the Supreme Court's hostility, most recently and emphatically expressed in *Gonzaga University v. Doe* to implying such rights in spending statutory." *Bruggeman*, 324 F.3d at 911. This latter statement makes clear, however, that the Seventh Circuit was aware of the issue and the Supreme Court's recent holding in *Gonzaga*.[3]

---

[2] Since § 1983 is not mentioned in the opinion it is unclear whether Plaintiffs brought their action under § 1983 or whether the Seventh Circuit recognized a private right of action under the Medicaid statute itself. In either instance, the Seventh Circuit answered the question of whether § 1396a(a)(8) creates an individually enforceable federal right. *See Gonzaga*, 536 U.S. at 284 (explaining that "the [§1983 and private right of action] inquiries overlap in one meaningful respect – in either case we must first determine whether Congress *intended to create a federal right*") (emphasis in original).

[3] Indeed, absent *Bruggeman*, and despite precedent in other circuits expressly holding that § 1396a(a)(8) confers a "right," *see Sabree v. Richman*, 367 F.3d 180, 191 (3d Cir. 2004) (holding that § 1396a(a)(8) creates a federal right enforceable through § 1983); *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002) (same); *Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006) (same), this Court would have held that § 1396a(a)(8) does not create a "right" that may be enforced through § 1983 for several reasons. First, § 1396a's language, like the Medicaid statute as a whole, focuses on the State's obligations in the aggregate, rather than an individual's entitlement. *See Blessing v. Freestone*, 520 U.S. 329, 344 (1997). For example, § 1396a(a)(8) itself provides that *a State shall furnish* medical assistance with responsible promptness, rather than stating that *eligible individuals shall receive* medical assistance with reasonable promptness. *See Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons"). Second, § 1396c empowers the Secretary of Health and Human Services to suspend payments to a state if it fails to "comply substantially" with the requirements of Title XIX. The fact that a State may satisfy its obligation through "substantial compliance" cuts against finding that Congress created an individual right or entitlement. *See Blessing*, 520 U.S. at 343. The punishment of a funding cut for non-compliance also implies that Congress did not intend to create a private right of action. *See Suter v. Artist M.*, 503 U.S. 347 363 (1992) (finding Congress created no private right of action where statute provided that State's non-compliance would be punished "by the Secretary in the manner [of reducing or eliminating payments]"); *Halderman*, 451 U.S. at 28 (same). Finally, § 1396a(a)(3) provides that a State must grant a hearing to any individual that is not provided assistance with reasonable promptness. The availability of such an administrative remedy is evidence that Congress did not intend to create a right enforceable in federal court under § 1983. *See Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 432 (1987) (administrative

Section 1396a(a)(8) thus creates a right enforceable under § 1983, a right to medical assistance with reasonable promptness to all eligible individuals. The Medicaid statute defines"medical assistance" as "payment of part or all of the cost of the [enumerated] services" to eligible individuals. 42 U.S.C. § 1396d(a). Given this definition, § 1396a(a)(8) guarantees "a prompt determination of eligibility and prompt provision of funds to eligible individuals to enable them to obtain the covered medical services that they need." *Bruggeman*, 324 F.3d at 910.[4]

The State argues that even if § 1396a(a)(8) creates an enforceable right, such right does not extend to the 24-hour CILA services offered under the HCBS-DD waiver. Unlike certain services that the Medicaid statute expressly provides that a State Plan must furnish, a State is not required to furnish waiver services such as CILA. *See* § 1396n(c)(1); § 1396a(a)(10). Nonetheless, once a State commits to provide optional services, it must provide them in compliance with the requirements of the Medicaid statute. (Plfs.' 56.1, ¶ 35.) One of Medicaid's requirements is to furnish medical assistance with reasonable promptness to all eligible individuals. 42 U.S.C. § 1396a(a)(8). No logical or statutory reason exists not to extend this requirement to all services for which an individual is eligible under the State plan, not just those services explicitly listed in the Medicaid statute. *See Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002) ("The strictures of § 1396a(a)(8) should apply with no less force to opt-in plans such as the waiver program, [because o]nce the waiver plan is created and approved, it becomes part of the state plan and therefore subject to federal law; the waiver plans must meet all requirements not expressly waived"); *Boulet v. Cellucci*, 107 F. Supp. 61, 76 (D. Mass. 2000) ("Traditional statutory analysis supports a finding that, once a state opts to

---

procedure in Act counseled against finding a congressional intent to create individually enforceable rights); *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 522-23 (1990) (same).

[4] Unlike plaintiffs in *Bruggeman*, Plaintiffs seek funding for eligible services not the provision of the medical services themselves. *See id.* at 910-11.

implement a waiver program and sets out eligibility requirements for that program, eligible individuals are entitled to those services and to the associated protections of the Medicaid Act"). The entitlement to reasonably prompt medical assistance still derives from the Medicaid statute, an Act of Congress, regardless of where the terms of eligibility are set. Thus, if Plaintiffs are eligible for CILA services, they have an enforceable right for the State to furnish such assistance with reasonable promptness.

### III. The Priority Population Criteria

The State determined that Plaintiffs both were eligible to participate in the HCBS-DD waiver program. (Defs.' 56.1, ¶¶ 3, 9.) The State, however, denied Plaintiffs residential habilitation services in a CILA because Plaintiffs did not meet the Priority Population Criteria. (Defs.' 56.1, ¶¶ 4, 12-13.) Thus, if Plaintiffs wanted to receive residential services, they would have to receive them in an institutional setting through the ICF/DD program. (Defs.' 56.1, ¶ 57.) Plaintiffs argue that the State's use of its Priority Population Criteria to limit access to CILA services violates the State's obligation to provide medical assistance with reasonable promptness to all eligible individuals. The CMS addressed the State Medicaid Directors, including the State of Illinois, in a letter dated January 10, 2001, concerning this issue. (Plfs.' 56.1, ¶ 115.) With regard to "access to services within a waiver," the letter provides that:

> A State is obliged to provide all people enrolled in the waiver with the opportunity for access to all needed services covered by the waiver and the Medicaid State plan. Thus, the State cannot develop separate and distinct service packages for waiver population subgroups within a single waiver. The opportunity for access pertains to all services available under the waiver that an enrollee is determined to need on the basis of an assessment and written plan of care/support.
>
> This <u>does not</u> mean that all waiver participants are entitled to receive all services that theoretically could be available under the waiver.

> The State may impose reasonable and appropriate limits or utilization control procedures based on the need that individuals have for services covered under the waiver. An individual's right to receive a service is dependent on a finding that the individual needs the service, based on appropriate assessment criteria that the State develops and applies fairly to all waiver enrollees.

(Plfs.' 56.1, ¶ 117.)

The State of Illinois added the Priority Population Criteria to the text of the Waiver as part of the waiver renewal process in 2002. (Defs.' 56.1, ¶¶ 58, 61.) The Population Priority Criteria for residential services were discussed with the CMS review team during the HCBS-DD Waiver renewal process. (Defs.' 56.1, ¶ 59.) The State notified CMS about the inclusion of the Priority Population Criteria for residential services in the text of the HCBS-DD Waiver in the cover letter and corresponding summary of changes submitted with the waiver renewal application. (Defs.' 56.1, ¶ 60.) CMS approved the HCBS-DD Waiver renewal request on June 17, 2002, effective July 1, 2002, including the Priority Population Criteria. (Defs.' 56.1, ¶ 61.) CMS thus found that the Priority Population Criteria are appropriate assessment criteria for determining an individual's need. And the Court can find no reason to undo CMS' determination that the Priority Population Criteria are a reasonable and appropriate limit based on the need that individuals have for residential services. *See Indiana Ass'n of Homes for Aging Inc. v. Indiana Office of Medicaid Policy and Planning*, 60 F.3d 262, 270 (7th Cir. 1995) (giving substantial deference to CMS' approval of terms in State plan).

Last, Plaintiffs argue that Illinois' excess Medicaid waiver capacity requires disabled persons to be funded up to the cap. Plaintiffs cite evidence that Illinois has not used all 10,000 slots in its HCBS waiver program from 2000 to the present. (Plfs.'s 56.1, § 93B.) Several courts have held that the state's waiver services are an entitlement for eligible individuals at least up to the cap. *See Bryson*, 308 F.3d at 88; *Boulet*, 107 F. Supp.2d at 78; *Makin v. Hawaii*, 114 F. Supp.2d 1017, 1027-

28 (D. Haw. 1999). But neither of Plaintiffs has been denied a slot in the waiver program. The State has found both eligible to participate in the waiver program, and, accordingly, they lack standing to pursue any a claim based on the State's alleged failure to use all of its waiver slots.

**Conclusion and Order**

Section 1396a(a)(8) creates an entitlement, enforceable under § 1983, to have the State furnish medical assistance with reasonable promptness for all eligible individuals. With regard to the medical assistance Plaintiffs seek, CMS knowingly approved the Population Priority Criteria as a reasonable and appropriate limit based on an individual's need for residential services under the waiver. Thus, Plaintiffs, who do not meet the Priority Population Criteria, are not entitled to residential services in a CILA. Wherefore, Defendants' Motion for Summary Judgment is granted and Plaintiffs' Motion for Summary Judgment is denied. Defendants' Motion to Strike Certain Exhibits is denied. Plaintiffs' Motion for Class Certification is denied as moot.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 25, 2006